FILED
U.S. DISTRICT COURT
**IN THE UNITED STATES DISTRICT COURT**RICT OF MARYLAND
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**                                  2016 AUG 22  P 4: 02

|  |  |  |
|---|---|---|
|  | * | CLERK'S OFFICE AT GREENBELT |
| **RICHARD HOWARD BEALL, JR,** | * | BY_____DEPUTY |
| **Petitioner,** | * |  |
| **v.** | * | **Case No.: GJH-15-2180** |
| **STATE OF MARYLAND, et al.,** | * |  |
| **Defendants.** | * |  |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### MEMORANDUM OPINION

On July 24, 2014, pro se litigant Richard Howard Beall, Jr., filed this hybrid Petition for Writ of Habeas Corpus and Complaint pursuant to 42 U.S.C. § 1983, objecting to forced administration of medication and seeking his release from confinement and damages. ECF No. 1. Also pending is Beall's Motion for a Court Date. ECF No. 11.

Respondents, the State of Maryland, Clifton T. Perkins Hospital Center, Khalid El-Sayed, M.D., and David Helsel, M.D. filed a Motion to Dismiss the hybrid Petition and Complaint for failure to state a claim upon which relief may be granted, supported by an affidavit and exhibits. ECF No. 6. Pursuant to *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975), Beall was provided an opportunity to respond with materials in support of his claims, and has filed an opposition. ECF Nos. 8, 9, 13 & 14.

Upon review of the pleadings and exhibits, the Court finds that a hearing is unnecessary to resolve the pending Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, the Court will dismiss Beall's claim for habeas corpus relief, and dismiss Beall's claim of forced administration of medication against the State of Maryland, Clifton T. Perkins Hospital, and

Helsel. Because Respondents' exhibits were relied upon in deciding the forced medication claim against El-Sayed, the dispositive motion will be construed as one for summary judgment, and will granted in favor of El-Sayed. The Motion for a Court date will be denied.

## I.    BACKGROUND

Clifton T. Perkins Hospital Center ("Perkins") is a State psychiatric hospital operated under the direction of the Behavioral Health Administration, a unit of the Maryland Department of Health and Mental Hygiene ("DHMH"). *See* Md. Code Ann., Health-Gen Art. §§ 2-106(a)(6), 7.5-201, 10-406(a)(1). At the time Beall filed this case, Helsel was Perkins' chief executive officer. El-Sayed is a psychiatrist employed by Perkins and has treated Beall since March 2014. ECF No. 6-3 ¶¶ 3, 8.

In October 2007, Beall was charged with second-degree assault in the District Court of Maryland for Carroll County. *State v. Beall,* Case No. 6S00040935 (Md. D. Ct. Carroll Cnty.). ECF No. 6-6. On August 21, 2008, Beall was found not criminally responsible for the assault and committed to DHMH. ECF No. 6-7. Beall was admitted to Springfield Hospital Center ("Springfield"), a psychiatric hospital under DHMH jurisdiction. ECF No. 6-8.

Beall was released from Springfield twice on conditional release pursuant to Md. Code Ann., Crim Pro. Art. §§ 3-114- 3-118. ECF No. 6-8. Each time he violated the conditions of release and was returned to the hospital under the provisions of Md. Code Ann., Crim Pro. Art. §3-121. ECF No. 6-8. After his second return to Springfield, Beall waived his right to be present at the hearing required by Md. Code Ann., Crim Pro. Art. § 3-121(f) and agreed to remain in the hospital. *Id.* On January 2, 2014, Beall's conditional release was revoked and it was ordered that he continue his commitment to the DHMH. ECF No. 6-9.

2

On February 3, 2014, Beall was transferred on an emergency basis to Perkins because of "the continued violence that [he] exhibited against other patients and staff members." ECF 6-10. Beall was notified of the emergency transfer as required by Md. Code Ann., Gen Health-Gen Art. § 10-807, and a hearing was scheduled for February 6, 2014. ECF No. 6-11, 6-12. After two postponements, one due to Beall's counsel's unavailability and one due to inclement weather, the hearing was held on February 20, 2104 before an administrative law judge ("ALJ") who determined that the evidence warranted transfer and Beall's relocation to Perkins was proper. ECF No. 6-13.

Beall complains that he does not want to take medications prescribed by El-Sayed at Perkins because they do not help him. ECF No. 1 at 3.[1] Beall asserts that El-Sayed refuses to believe that he is not sick, that El-Sayed is not helping him, and has caused him significant suffering. *Id.* Beall states that on or about July 14, 2014, he "decided to try to see how [his] body and mind would respond with [certain] medication. The reason why is because when I was not [taking] medication anti phycotic [sic] less depressed." *Id.* He indicates that he "feel[s] [horrible] every day seems the same no life." *Id.* Beall states the use of "needles" for two weeks was "cruel and unusual punishment," *id.*, and contends that there is audio and video evidence of such forced medication. ECF No. 14. As relief, Beall asks for $350,000 for his pain and suffering, to be sent to a private hospital, and to be released. ECF No. 1 at 3. Additionally, Beall asserts it was a mistake for him to plead not criminally responsible. *Id.*

In his opposition to Respondents' Motion to Dismiss, Beall claims that he was unaware when he entered his plea of not criminally responsible of what that would entail.[2] ECF No. 9 at

_____

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[2] The validity of the plea is not at issue in this case.

3

1. He also claims the state of his mental health record is exaggerated, but provides no supporting details in this regard. Beall states that he has performed a "couple of spiritual wonders," and as a result, doctors have diagnosed him as schizophrenic and bipolar. ECF No. 9 at 1.

El-Sayed attests that Beall is diagnosed with schizoaffective disorder, bipolar type, and his symptoms include grandiose delusions, threats of violence, and assaultive behavior. ECF No. 6-3 ¶ 4. When Beall first entered Perkins, he alternated between complying and not complying with his prescribed medication regimen. *Id.* ¶ 5. During the summer of 2014, Beall's behavior became increasingly aggressive and violent. *Id*. He punched the glass on the door to his room and shattered it. He exhibited increasing paranoia, repeatedly threatened staff, and threatened to kill his father. He punched a nurse and was placed in restraints. While in restraints, he named the persons he planned to kill when the restraints were removed. *Id*. Beall admitted to El-Sayed that he had not been taking his medications. ECF No. 6-4 at 2. Because he refused to take his prescribed medication, El-Sayed requested that a clinical review panel ("CRP") consider the case pursuant to Md. Code Ann., Health-Gen Art. § 10-708, to consider whether medication should be administered to Beall over his objection. ECF No. 6-3 ¶ 5. On August 6, 2014, CRP approved the non-consensual administration of medication to Beall. *Id.* The CRP decision was renewed through April 2015. At that time, the treatment team and El-Sayed believed that Beall's condition had improved so that the CRP was no longer necessary. *Id*. ¶ 6.

After the CRP expired, Beall's condition worsened. He again became hostile and threatened staff and patients. *Id*. ¶ 7. Beall expressed bizarre and grandiose delusions and

4

threatened to kill El-Sayed and other staff with an AK-47. He refused to take certain psychotrophic medications. *Id.*[3]

On June 3, 2015, the CRP reconvened and approved the administration of medicine over Beall's objection. ECF No. 6-3 ¶ 7; ECF No. 6-4. The CRP was composed of Inna Taller, M.D., Monica Chawla, M.D., and Valorie Grimes, LCSW-C. ECF No. 6-4 at 1. Beall, El-Sayed, Marvin Quinel, a staff member, and Jerry Willis, who is identified on the CRP review form as a "rights advisor," attended the CRP. During the CRP review, Beall spoke about "living in a spiritual world and a supercomputer being the mind of God." *Id.* at 3. He threatened to kill people at Perkins by creating a tornado. He threatened to kill CRP members and their families with tornados and floods. ECF No. 6-4 at 3. The CPR considered Beall's refusal to take his medication as directed, the symptoms of his illness, his clinical need for medication and that alternative treatment such as individual and group therapy had been ineffective. The panel concluded that without the medication, Beall was at substantial risk of continued hospitalization because he was a danger to himself or others. *Id.* In addition to approving administration of oral medication, the panel approved administration of medication by injection. *Id.*

The CRP decision was renewed on August 31, 2015. ECF No. 6-5. The CRP, composed of Inna Taller, M.D, Ifeoma Thompson, M.D, and Rachelle Mechaly, LCSW-C, found Beall had attenuated symptoms of his illness and continued to entertain delusional thoughts, although he understood some of the beliefs may not be real. Beall told the review panel about his "creedence" and voices telling him he was a millionaire. *Id.* at 3. Beall said he believed the voices, and denied any side effects from the medication. He stated he did not think he was

---

[3] Beall refused to take: quietiapine, divalproex sodium or valproic acid, olanzapine, and fluphenazine. ECF No. 6-4 at 2. Quietiapine, olanzapine, and fluphenazine treat psychotic symptoms. Divalproex sodium or valproic acid treats mood symptoms, agitation, and impulsivity. *Id.* at 3.

5

mentally ill and did not see the need for medication. Beall did not appeal the CRP decisions. *Id.*;
ECF No. 6-3 ¶ 7.

## II.    DISCUSSION

Respondents move for dismissal on several grounds. They maintain that Beall is lawfully
confined under Md. Code Ann., Crim. Pro. Art. 3, and was appropriately transferred to Perkins.
Further, they assert that Beall has not exhausted his state remedies, and that Beall does not state a
colorable claim under 42 U.S.C. § 1983.

As a threshold matter, however, the Court must determine whether Beall has capacity to
bring this action. An incompetent person who does not have a duly appointed representative may
sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or
issue another appropriate order—to protect a minor or incompetent person who is unrepresented
in an action. Fed. R. Civ. P. 17(c).

In response to the Court's Order to address whether appointment of a guardian for Beall
is warranted in this matter, ECF No. 4, El-Sayed attests that Beall is capable of making his own
decisions about his health care, stating that it is his opinion, to a reasonable degree of medical
certainty, that Beall does not need a guardian for the purposes of making health care decisions.
ECF 6-3 ¶ 8.

Under Fed. R. Civ. P. 17(b), the capacity of an individual to sue is determined by the law
of the individual's domicile. Thus, the law of Maryland determines whether Beall has the
capacity to file this lawsuit. Under Maryland law, a person is presumed competent to stand trial.
*Peaks v. State*, 18 A.3d 917, 924 (Md. 2011). Adults are also presumed to be capable of making
their own informed decisions, even after involuntary admission to a psychiatric hospital. *Beeman
v. Department of Health and Mental Hygiene*, 666 A.2d 1314, 1325 (Md. Ct. Spec. App. 1995).

6

"The fact that an inmate has been involuntarily institutionalized in a psychiatric facility is not tantamount to finding the inmate is mentally incompetent to make treatment decisions." *See Williams v. Wilzack*, 573 A.2d 809, 820 n.8 (Md.1990). In light of the foregoing, the Court concludes Beall may bring this action on his own accord.

## A. Beall's Habeas Claims

A federal court may grant habeas relief for an individual who is "in custody pursuant to the judgment of a State court," if the individual is "in custody in violation of the Constitution" or a federal law. *See* 28 U.S.C. § 2254(a). Beall, however, does not claim that his commitment violates a constitutional provision or federal law, and thus fails to state a cognizable basis for habeas relief. The Petition must be dismissed on this basis.[4] Additionally, the Petition is deficient for several other reasons.

First, Respondents correctly note the proper respondent in a habeas proceeding is the custodian of the individual who is contesting confinement. *See* 28 U.S.C. § 2242, 2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). In this case, Helsel, the CEO at Perkins at the time the Petition was filed, is the appropriate Respondent on the Petition. All other Respondents, except for Helsel, are entitled to dismissal from the Petition on this ground.

Respondents next contend that the habeas petition is subject to dismissal for lack of exhaustion. Under *Rose v. Lundy*, 455 U.S. 509, 518 (1982), before a petitioner may file a federal habeas relief, he must exhaust remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. 28 U.S.C. § 2254(b) & (c); *Thomas v. Saint Elizabeth's Hosp.*, 720 F. Supp. 14, 15 (D.D.C.1989). Although allowed by Maryland law to request his release from

---

[4] The Court declines to issue a Certificate of Appeability. *See* 28 U.S.C § 2253(c)(2) ("A Certificate of Appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").

7

commitment, *see* Md. Code Ann., Crim Proc. § 3-119, Beall did not request an administrative hearing under section 3-119(b) or a court trial under section 3-119(c). Neither did Beall file a habeas petition in state court, although authorized to do so under Md. Ann Cts. & Jud. Proceedings Art. 3-702(a) or Md. Code Ann., Health-Gen Art. § 10-804(a). Moreover, Beall does not dispute his failure to exhaust his claims. Accordingly, the Petition is subject to dismissal for lack of exhaustion.

Even if Beall had properly exhausted cognizable claims for habeas relief, he fails to refute Respondents' evidence demonstrating that he is lawfully confined. Respondents note that the District Court for Carroll County committed Beall to the DHMH after finding him not criminally responsible and continued his commitment after he twice violated terms of conditional release. *See* Md. Ann Crim. Pro. Art. 3-112(a) (providing "after a verdict of not criminally responsible, the court immediately shall commit the defendant to the Health Department for institutional inpatient care or treatment"); *see also* Md. Ann Crim. Pro. Art. 3-114(c) (providing a "committed person is eligible for conditional release from commitment only if that person would not be a danger, as a result of mental disorder or mental retardation, to self or to the person or property of others if released from confinement"). Beall waived his right to a hearing and agreed to remain hospitalized. ECF No. 6-8. On January 2, 2014, his conditional release was revoked and it was ordered that Beall remain committed to DHMH. ECF No. 6-8. Notably, Beall does not put forth any reason why he believes that he is entitled to release, nor does he claim that Respondents violated statutory protections concomitant to his commitment.

Respondents also maintain Beall's transfer to Perkins was proper. Under Maryland law, the transfer required the director of the Behavioral Health Administration to determine that a transfer was necessary, so that Beall could receive better care or treatment at Perkins or to

8

benefit the safety or welfare of others. Md. Code Ann., Health-Gen Art. § 10-807(b). Where, as here, the director determines there is an emergency requiring an immediate transfer, the patient may be transferred after notice to the patient, so long as a transfer hearing is scheduled within ten calendar days after the transfer. *Id.* § 10-807(c)(2). At that hearing, an ALJ must determine whether the criteria for transfer have been met. *Id.* § 10-807(d). These procedures were followed in this case. *See* ECF Nos. 6-10, 6-11, 6-12. The ALJ later affirmed the emergency transfer decision, ECF No. 6-13, and Beall did not seek judicial review, although permitted to do so under Md. Code Ann., Health-Gen Art. § 10-807(e); Md. Code Ann., State Gov't. Art. § 10-222.

Beall does not assert that state procedures were violated nor does he identify grounds to find his confinement unlawful. For the above-stated reasons, Beall's claims for federal habeas relief will be denied and dismissed with prejudice.

## B.  Forced Medication Claim under 42 U.S.C. § 1983

The Court must liberally construe Beall's claim that he was forcefully medicated in violation of his due process rights under the Fourteenth Amendment to the United States Constitution. *See Sell v. United States*, 539 U.S. 166, 177 (2003). Respondents seek dismissal based on lack of personal participation in the matters alleged and because they are not amenable to suit under 42 U.S.C. § 1983. Additionally, Respondents maintain that Beall's medication administration followed the procedures set forth under Md. Code, Health-Gen Art. § 10–708, governing the procedures to be followed when a patient refuses medication, providing constitutionally sufficient due process.

### 1. Standard of Review

Respondents dispositive motion is premised in part on Rule 12(b)(6) of the Federal Rules of Civil Procedure. In considering a Rule 12(b)(6) motion, the Court "must accept as true all of

the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and quotations omitted). The Court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events. *See, e.g., Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009). Additionally, the Court is not obliged to accept legal conclusions couched as factual allegations, *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), or "legal conclusions drawn from the facts," *Monroe v. City of Charlottesville,* 579 F.3d 380, 385–86 (4th Cir. 2009).

Generally, in a Rule 12(b)(6) motion, a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013). But, under Rule 12(d) of the Federal Rules of Civil Procedure, a district court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion [to one for summary judgment], or to reject it or simply not consider it." 5C Wright & Miller, Fed. Prac. & Pro. § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149.

In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165–67. If a court considers matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," Fed.R.Civ.P. 12(d), and"[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "[T]he term 'reasonable opportunity' requires that all

10

parties be given 'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery.'" *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974)).

As noted, Beall was provided notice of the Respondents' dispositive filing and supporting affidavit and exhibits and an opportunity to respond with his own exhibits, consistent with *Roseboro v. Garrison*, 528 F.2d. at 309. Moreover, consideration of Respondents' exhibits will facilitate disposition of this claim. The Court will therefore consider on summary judgment, Beall's claim of forced medication against El-Sayed.

Summary judgment is governed by Rule 56(a) of the Federal Rules of Civil Procedure, which provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Medical Center*, Inc., 290 F.3d 639, 644–45 (4th Cir. 2002).

11

### 2. Lack of Personal Participation in Matters Alleged.

Helsel moves for dismissal for failure to state a claim, noting that Beall does not allege that he was personally involved in the decision to involuntarily medicate him. In order for liability to exist under § 1983, there must be personal involvement by the defendant in the alleged violation. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see also Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976).

Insofar as Beall seeks to hold Helsel liable under a theory of supervisory liability under §1983, there must be evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw*, 13 F.3d at 799. Beall's allegations fail to satisfy the requisites for establishing supervisory liability. For these reasons, the forced medication claim against Helsel will be dismissed.

### 3. Amenability to Suit

A state and its agencies are not persons for the purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Perkins is a state psychiatric hospital operated by a unit of the DHMH, a department of Maryland State Government. Md. Code Ann., Health-Gen § 2-101. Perkins is not a "person" and is therefore not amenable to suit under 42 U.S.C. §1983.

The Court also notes that the Eleventh Amendment[5] to the United States Constitution provides that a state and its agencies and departments are immune from suits in federal court

---

[5] Respondents do not address Eleventh Amendment immunity in the Memorandum filed with their dispositive motion.

brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't Art. § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus the claim against the State of Maryland, and Perkins, a unit of the State Behavioral Health Administration-State Department of Health and Mental Hygiene, a State agency, is barred by the Eleventh Amendment. Although the Eleventh Amendment "permits suits for prospective injunctive relief against state officials acting in violation of federal law," *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)), this rule does not extend to state agencies as parties.

### 4. Claim Against El-Sayed

Finally, with respect to Beall's § 1983 claim against El-Sayed, Beall alleges that El-Sayed refuses to believe he is not sick. Beall states that he has suffered a great deal because of El-Sayed. ECF No. 1 at 3. Beall avers that receiving injections ("needles") for two weeks constituted cruel and unusual punishment. Beall, however, does not specifically attribute the injections to El-Sayed. *Id.*

As is anyone who is confined in state custody, involuntarily committed patients at state psychiatric facilities are afforded liberty interests under the Due Process Clause of the Fourteenth Amendment. Therefore, the court must analyze the complaint within the scope of Fourteenth Amendment protections, which requires that such individuals are provided with such services as are necessary to ensure their "reasonable safety" from themselves and others. *See Youngberg v. Romeo*, 457 U.S. 307, 324 (1982); *see also Patten v. Nichols*, 274 F. 3d 829, 837 (4th Cir. 2001) (applying *Youngberg* standard to involuntarily committed psychiatric patients).

13

In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." *Youngberg*, 457 U.S. at 319 (quoting *Poe v. Ullman*, 367 U.S. 497, 542 (1961)). The Court applies the "professional judgment" standard, in which the Court considers whether "professional judgment in fact was exercised," in striking the balance between an individual's liberty interest and the interests of the State. *Id.* at 321. Decisions made by professionals are presumed valid and "liability may be imposed only when the decision by the professional is such a substantial departure from . . . professional judgment, practice, or standard as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323.

 As an involuntarily committed patient in a State psychiatric facility, Beall has a "'significant constitutionally protected liberty interest in avoiding the unwarranted administration of antipsychotic drugs.'" *Sell*, 539 U.S. at 178 (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)). "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009). "Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions." *Youngberg*, 457 U.S. at 324. The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. *See DeShaney v. Winnebago*, 489 U.S. 189, 200 (1989); *Youngberg*, 457 U.S. at 324.

Here, Beall does not allege facts from which this Court can conclude that there was a substantial departure from accepted professional judgment in his treatment. Further, there is

ample evidence that Beall's involuntary medication was compelled by his increasingly aggressive and violent behavior and refusal to comply with his prescribed medication regimen. Beall does not dispute receiving requisite procedural protections before he was administered medication. Absent a genuine dispute of material fact whether Beall's right to due process was abridged, El-Sayed is entitled to summary judgment in his favor.

## III.   CONCLUSION

For these reasons, the Court will dismiss Beall's claims for habeas relief and his claims under § 1983 for failure to state a cognizable claim for relief. Beall's due process claim will be dismissed as to Helsel, Perkins, and the State of Maryland, and summary judgment will be granted in favor of El-Sayed. A separate Order follows.

Dated: August  22 , 2016

_____
GEORGE J. HAZEL
United States District Judge